UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LAURAN CODE,

                      Plaintiff,

        -against-

THE CITY OF NEW YORK,

                      Defendant.
------------------------------------------------------------------X

**AMENDED COMPLAINT**

**17 Civ. 5184 (RWS)**

**JURY TRIAL DEMANDED**

       Plaintiff, LAURAN CODE ("Plaintiff" or "Ms. Code"), by her attorneys, JON L. NORINSBERG, Esq., and BARRY LEVIN, Esq., complaining of the Defendant, THE CITY OF NEW YORK ("Defendant" or "the City"), respectfully sets forth and alleges as follows:

**PRELMINARY STATEMENT**

       1.     This is an action for severe and permanent personal injuries sustained by Plaintiff, LAURAN CODE, an innocent bystander who was shot as a result of the negligence and recklessness of three New York City police officers on May 18, 2016. Said officers randomly and indiscriminately discharged their weapons in an attempt to shoot Gary Conrad, an emotionally disturbed person ("EDP") who, prior to being violently tackled by the NYPD, posed no threat of danger to anyone and was attempting to leave the scene. As detailed below, the subject police officers violated mandatory rules and regulations of the NYPD for dealing with an EDP, and further violated NYPD rules and regulations in discharging their weapons with a reckless disregard for the safety of members of the public, causing severe and permanent injuries to plaintiff LAURAN CODE.

       2.     This action is brought against the CITY OF NEW YORK under New York State law, based upon the doctrine of *respondeat superior*, seeking damages for the negligent and

1

reckless actions of three police officers on the date of the subject incident. The nature of the claim also involves the negligent hiring and/or retention of said officers and the negligent supervision, training, retention and/or discipline of said officers.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332.

4. This Court has jurisdiction over the parties by reason of diversity of citizenship between the Plaintiff, a resident of California and a citizen of Canada, and the defendant CITY OF NEW YORK, and the amount in controversy, pursuant to 28 U.S.C. §1332, exceeds $75,000.00.

5. Upon information and belief, venue is properly placed in the United States District Court for the Southern District of New York, because the occurrence took place here, the witnesses are located here, and this is the most convenient place for the trial of this action.

## COMPLIANCE WITH CONDITIONS PRECEDENT

6. On August 10, 2016, a Notice of Claim was timely served upon Defendant CITY OF NEW YORK within ninety (90) days of the aforesaid cause of action, in compliance with General Municipal Law section 50-e.

7. Thereafter, on February 17, 2017, the Defendant, CITY OF NEW YORK, by its attorneys, conducted a Municipal Hearing of the Plaintiff, in compliance with General Municipal Law § 50-h.

8. Over thirty (30) days have elapsed since the claim upon which this action is founded was served upon the Defendant for adjustment, and said Defendant has neglected and/or refused to make an adjustment or payment thereon for said period of thirty (30) days after such presentation.

9.      This action has been timely commenced prior to the one year and ninety days (1 year and 90 days) Statute of Limitations for actions against municipalities.

10.     Plaintiff has complied with all applicable sections of the General Municipal Law which are conditions precedent to bringing this action against the Defendants.

## THE PARTIES

11.     At all times hereinafter mentioned, Plaintiff, LAURAN CODE, was and is a lawful citizen of Canada, currently residing in the County of Orange, State of California.

12.     At all times hereinafter mentioned, Defendant THE CITY OF NEW YORK, was and is a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York.

13.     At all times hereinafter mentioned and at the time of the occurrence, all of the officers involved in this incident were on duty at the time and were acting within the scope of their employment and in furtherance of same, as agents, servants and/or employees of Defendant, THE CITY OF NEW YORK.

14.     At the time of the incident, Plaintiff was a Director of merchandizing and Design with Shutterfly Inc., earning an annual compensation in excess of $200,000.00. Additionally, Plaintiff invested in excess of $50,000.00 into her own jewelry company with an expected annual revenue in excess of this amount for the year 2016.

15.     As a result of being shot by the police on May 18, 2016, Plaintiff LAUREN CODE was terminated from her employment with Shutterfly and her jewelry company collapsed. To date, Plaintiff remains unemployed due to her severe, permanent and disabling injuries, as set forth below.

## FACTS

16. On May 18, 2016 at approximately 8:15 a.m., at or near 8th Avenue and 48th Street, in the County, City and State of New York, Plaintiff, LAURAN CODE, an innocent bystander, was caused to be seriously injured when she was shot as a result of several officers simultaneously discharging their weapons at one Gary Conrad ("Mr. Conrad"), an EDP who had been unlawfully and improperly detained by Officer Adolfo Peralta ("P.O. Peralta" or "Officer Peralta"), as he was leaving the Food Emporium located on 48th Street and Eighth Avenue in the County, City and State of New York.

17. On May 18, 2016, at the subject Food Emporium, a verbal confrontation had taken place between Gary Conrad and the cashier inside of the Food Emporium. Mr. Conrad was acting in a loud, belligerent and irrational manner toward the cashier, and was clearly an emotionally disturbed person. After several minutes, the Store Manager and another employee had interceded and Mr. Conrad was preparing to leave the store. At that time, an officer on foot patrol, later identified as P.O. Peralta, arrived at the scene.

18. Officer Peralta, who had been informed of Mr. Conrad's irrational and belligerent behavior, and knew that he was an EDP, spoke briefly with Mr. Conrad inside of the store. At no time did P.O. Peralta ever ask for Mr. Conrad's identification, nor did he ever inform Mr. Conrad that he was under arrest.

19. After briefly speaking with Mr. Conrad, P.O. Peralta allowed Mr. Conrad to leave the store and go about his business. As soon as Mr. Conrad left the store, however, P.O. Peralta changed his mind and decided to forcibly stop Mr. Conrad as he traversed down Eighth Avenue,.

20. Suddenly, without any warning or provocation, Officer Peralta ran up to Mr. Conrad, grabbed his knapsack and violently threw him to ground. As set forth more fully below,

P.O. Peralta's decision to attack Mr. Conrad in this manner was a flagrant violation of NYPD rules for detaining an EDP. It was also a blatant violation of NYPD rules for using of physical force in effectuating a stop and/or arrest of a citizen.

21.     Thereafter, Mr. Conrad and P.O. Peralta began to wrestle on the ground, and two (2) other police officers approached them and were standing over them. As Mr. Conrad and Officer Peralta struggled on the ground, the other two officers decided, inexplicably, to back away from their fellow officer and allow P.O. Peralta to handle this situation by himself. In so doing, these two officers violated mandatory police rules and regulations for detaining an EDP, and abdicated their duties as police officers.

22.     Shortly thereafter, Mr. Conrad was able to extricate himself from P.O. Peralta and get up off the ground, whereupon he pulled out a knife. At this point, P.O. Peralta, who was standing several feet away from Mr. Conrad, did not issue any commands to Mr. Conrad, nor did he issue any warnings. Further, P.O. Peralta did not deploy his pepper spray, which would have immediately disabled Mr. Conrad, nor did he attempt to use his baton to gain control over Mr. Conrad. Instead, P.O. Peralta immediately resorted to deadly physical force, pulling out his gun and firing his weapon indiscriminately in the direction of Mr. Conrad. P.O. Peralta's immediate resort to deadly physical force, without first attempting to use less lethal force, was a violation of mandatory NYPD rules and regulations.

23.     At the same time that Officer Peralta started firing his weapon, the other two officers on the scene, who up to that point had stood idly by and done nothing while this encounter was unfolding, suddenly drew their weapons and started firing indiscriminately in the direction of Mr. Conrad. Thus, several police officers were firing their weapons at the same time on a crowded New York City street, with a complete disregard for the safety of the pedestrians who were

5

standing in close proximity to this area. In total, nine (9) shots were fired by the officers, with two bullets striking Mr. Conrad, and another bullet striking Plaintiff. Six (6) of the nine (9) shots fired missed their target completely.

24. Plaintiff LAURAN CODE first realized that she had been shot when she felt a burning sensation in her right wrist. She then looked down at her wrist and saw that part of the flesh of her wrist was gone. There was blood all over her arm and on the ground below her.

25. After she was shot, no one came to Plaintiff's assistance, and she did not have her cell phone with her to call anyone for help. At that moment, Plaintiff LAURAN CODE believed that she was going to bleed to death in the street. Plaintiff was also shocked and horrified at having just witnessed the police shoot a man to death who was standing near her.

26. Plaintiff LAURAN CODE was eventually taken by ambulance to a local hospital. The doctors informed her that the bullet had lodged inside of her wrist and that it would have to be surgically removed by a hand specialist. Thereafter, Plaintiff flew back to California and underwent surgery to extricate the bullet from her wrist. While the bullet was successfully removed, Plaintiff suffered a severe and permanent nerve injury which afflicts her to this day.

27. As a result of Plaintiff LAURAN CODE being shot in her right wrist, she suffered an injury to her ulnar nerve and has been diagnosed with Complex Regional Pain Syndrome ("CPRS") in her right arm and shoulder. CPRS is a progressive condition resulting in Plaintiff living each day of her life with severe joint pain, stiffness and inflammation on her right side. Further, Plaintiff lives each day with a severe burning sensation in her right wrist with the pain migrating throughout her upper body. Plaintiff has lost muscle control of her right hand with constant swelling, burning sensation, allodynia and severe loss of range of motion.

28.   To cope with the intense pain that Plaintiff LAURAN CODE experiences on a daily basis, Ms. Code has undergone multiple pain management modalities, including Percutaneous Electronic Nerve Stimulator ("PENS") treatments, Transcutaneous Electrical Nerve Stimulation ("TENS") treatments, and stellate ganglion nerve blocks.  Plaintiff must also take pain medication on a daily basis and has undergone extensive physical therapy to cope with her severe discomfort.

29.   Apart from her physical injuries, Plaintiff LAURAN CODE has suffered severe psychological trauma from this incident. Plaintiff has been diagnosed with Posttraumatic Stress Disorder ("PTSD"), Depressive Disorder and Anxiety Disorder. Ms. Code has undergone extensive psychiatric treatment to help her cope with her severe anxiety, hypervigilance, persistent nightmares and intrusive flashbacks.  Ms. Code also suffers from depression, uncontrollable sobbing, short-term memory loss and lapses in concentration. Prior to this shooting, plaintiff LAURAN CODE had no psychiatric treatment history and had never suffered from any mental health issues whatsoever.

30.   As result of being shot by the police, Plaintiff LAURAN CODE lost her position as a fashion designer with Shutterfly, and she also lost her jewelry business.  At the time of the shooting, Plaintiff was earning in excess of two-hundred thousand ($200,000) dollars per year.

31.   Plaintiff LAURAN CODE is currently under the care of a neurologist, a psychiatrist, a pain management DO, and therapists for all of the above medical issues. Prior to the shooting, Ms. Code, a former model, had no prior medical history and led a very active lifestyle.

32.   As a result of the aforementioned occurrence, Plaintiff LAURAN CODE has experienced, and continues to experience, great pain and suffering, mental anguish and emotional distress, as well as loss of enjoyment of life. Plaintiff was and still is incapacitated, and will likely be so for the rest of her life.  Plaintiff was compelled to and did seek medical care and treatment and

will in the future be forced to expend additional sums for medical care and treatment. Plaintiff was prevented from attending to her usual duties, functions and occupation, which will continue into the future, and in other ways did expend diverse sums of money, all of which will continue in the future, all to her damage and special damages.

## VIOLATION OF MANDATORY NYPD RULES AND REGULATIONS

33. Pursuant to the New York Police Department Patrol Guide ("Patrol Guide" or "PG") Section 221-01, the primary duty of members of the New York City Police Department is to protect human life.

34. The New York City Police Department specifically trains its police officers on how to deal with EDPS, or emotionally disturbed persons. One of the cardinal rules that must be followed is that deadly physical force should never be used against an EDP unless, and until, all other non-lethal levels of force have been attempted. P.O. Peralta violated this rule by immediately resorting to deadly force against Gary Conrad, without first attempting to use pepper spray, a baton and/or a Taser to subdue Mr. Conrad.

35. Another mandatory NYPD rule is that officers are required to maintain a zone of safety between themselves and the EDP until the Emergency Service Unit ("ESU") and a Patrol Supervisor arrive. P.O. Peralta violated this rule. P.O. Peralta did not maintain a zone of safety between himself and the EDP. Instead, he immediately closed the gap between himself and Mr. Conrad, grabbed him by his knapsack and violently threw him to the ground.

36. The other officers on the scene likewise violated mandatory NYPD rules by failing to call for ESU prior to the shooting. Instead, these officers stood idly by and watched their fellow officer engage in a protracted physical altercation with Mr. Conrad, offering no assistance and

failing to call for back up. All officers on the scene, including P.O. Peralta, were required to call a Patrol Supervisor before taking any action against an EDP.

37. The officers' violation of the above rules was a direct and proximate cause of the shooting of Plaintiff LAURAN CODE. Specifically, had Officer Peralta followed mandatory NYPD procedures for dealing with an EDP, he would never have discharged his weapon and Ms. Code would never have been shot. Moreover, P.O. Peralta never would have tackled Mr. Conrad in the first instance, and never would have escalated a non-violent, non-threatening situation into violent shooting incident that resulted in Mr. Conrad's death and Ms. Code being struck by a bullet.

38. The negligence of the other officers on the scene likewise caused and/or contributed to the injuries suffered by Plaintiff LAURAN CODE. Had the other officers on the scene followed mandatory police procedures, they would have immediately contacted ESU and requested a Patrol Supervisor to come to the scene before using deadly physical force against Mr. Conrad. Further, they would not have used any force against Mr. Conrad, much less deadly physical force, prior to the arrival of ESU. The subject officers' violation of accepted police practices was a proximate cause of the injuries suffered by Plaintiff LAURAN CODE.

39. The foregoing NYPD rules and procedures are not only set forth in the Patrol Guide, but are also well-established as proper police practice at the NYPD. Police officers are trained extensively regarding how to deal with EDPs, and all officers are expected to follow these mandatory directives without exception. P.O. Peralta and the other officers on the scene violated these mandatory rules.

40. Apart from violating NYPD rules regarding EDPs, P.O. Peralta also violated mandatory NYPD rules regarding the use of deadly force. Officers are trained to *never* discharge their weapons when a civilian is in close proximity to the target suspect, as doing so poses an

unreasonable risk of harm to innocent bystanders and the public at large. P.O. Peralta violated this rule. P.O. Peralta fired his weapon in a random and indiscriminate manner, striking his target only two times (at most) yet discharging seven rounds. At the time that he fired his weapon, P.O. Peralta knew that there were several bystanders in close proximity to Gary Conrad.

41. The other officers on the scene likewise violated this rule by firing their weapons in a random and indiscriminate manner, shooting at Mr. Conrad at least two (2) times. At the time that these officers fired their weapon, they knew that there were several bystanders in close proximity to Gary Conrad.

42. The foregoing NYPD rules and procedures regarding discharging weapons in public are not only set forth in the Patrol Guide, but are also well-established as proper police practice at the NYPD. Police officers are trained extensively regarding discharging their weapons when innocent bystanders are nearby, and all officers are expected to follow these mandatory directives without exception. P.O. Peralta and the other officers on the scene violated these mandatory rules.

43. P.O. Peralta further violated mandatory police rules regarding the use of force against a civilian. Pursuant to established police procedures, it was the duty of P.O. Peralta to de-escalate the situation and not partake in the use of excessive force. Instead, P.O. Peralta, without any warning or provocation, forcibly grabbed Gary Conrad by his knapsack and violently slammed him to the ground on Eighth Avenue. Mr. Conrad had committed no crime and should have been free to go about his business.

44. According to the Patrol Guide, Section 212-11, P.O. Peralta should have only requested information from Gary Conrad, such as his name and address. There was no credible

basis for stopping and detaining Gary Conrad in the first instance. Mr. Conrad should have been able to walk away.

45. By the time that P.O Peralta had first approached Mr. Conrad inside the Food Emporium, the verbal confrontation had already ceased. Mr. Conrad had not physically touched anyone in the store. No crime was committed and he was free to leave the store, which he did. At no point in this initial encounter did P.O. Peralta have "reasonable suspicion" that Mr. Conrad had committed a crime, much less did he have any justification for using physical force against Mr. Conrad.

46. In short, P.O. Peralta flagrantly violated NYPD rules by following Mr. Conrad and grabbing his knapsack, without warning or provocation, and violently slamming him to the ground. Mr. Conrad was no threat to the officer and was walking down Eighth Avenue. The police officer's conduct was solely responsible for the chain of events that led to Mr. Conrad's untimely death and Plaintiff being shot.

47. As a result of the unprovoked, vicious assault committed by P.O. Peralta, Mr. Conrad attempted to defend himself by pulling out a knife from his knapsack, resulting in Peralta and two other officers firing their guns into a crowd, killing Mr. Conrad and shooting and permanently disabling Plaintiff.

48. Notwithstanding the fact that P.O. Peralta had no justification to physically assault Mr. Conrad, once he was on the ground, and pursuant to the Patrol Guide, Section 212-95, P.O. Peralta was required to use pepper spray, a non-lethal means of force, to subdue Mr. Conrad.

49. Pursuant to the Patrol Guide, Section 212-117, P.O. Peralta, was also trained in the use of a Conductive Energy Device (hereinafter "taser"), and proper NYPD procedures required P.O. Peralta to taser Mr. Conrad prior to pulling out his firearm and firing seven (7) times at 8:15

a.m. on a crowded street during rush hour, resulting in the death of Mr. Conrad, and shooting and permanently disabling Plaintiff LAURAN CODE.

## AS AND FOR A FIRST CAUSE OF ACTION
## NEGLIGENCE

50.     Plaintiff LAURAN CODE repeats, realleges and reaffirms each and every paragraph numbered "1" through "49" with the same force and effect as if more fully set forth at length herein.

51.     Defendant CITY OF NEW YORK, and its agents, servants and/or employees, owed a duty to the members of the public, including Plaintiff herein, to exercise reasonable care in carrying out and performing its police functions, and to protect the health, safety and welfare of all persons in the City of New York.

52.     P.O. Peralta breached this duty by flagrantly violating proper police procedures. Specifically, P.O. Peralta breached this duty by, inter alia: i) using deadly force against an EDP without first attempting to use non-lethal levels of force; ii) failing to maintain a zone of safety with an EDP; iii) failing to contact ESU prior to using force against an EDP;  iv) failing to contact a Patrol Supervisor prior to using force against an EDP; v) indiscriminately firing his gun in a crowded area during morning rush hour; vi) unlawfully tackling Mr. Conrad and violently throwing him to the ground, when there was no basis for such an excessive use of force;  and vii) improperly stopping Mr. Conrad in the first instance, when there was no lawful basis to do so, setting in motion the chain of events that led to Plaintiff's shooting.

53.     The other officers on the scene likewise breached their duty of care, and flagrantly violated proper police procedures. Specifically, the subject officers breached their duty by, inter alia: i) failing to intercede when P.O. Peralta and Mr. Conrad were on the ground;  ii)  failing to use to use non-lethal levels of force against Mr. Conrad when he was on the ground ; iii) failing to

12

contact ESU prior to using force against an EDP; iv) failing to contact a Patrol Supervisor prior to using force against an EDP; and v) indiscriminately firing their guns in a crowded area during morning rush hour.

54. All of the above officers knew, or should have known, that by discharging their weapons nine (9) times during morning rush hour on a crowded street, an innocent bystander could be seriously injured, as Plaintiff LAURAN CODE in fact was, or that such actions could possibly cause death to an innocent person.

55. As a direct and proximate result of the officers' negligent acts and omissions, as set forth above, as well as their reckless disregard for human life, on May 18, 2016, Mr. Conrad was killed and Plaintiff LAUREN CODE, an innocent bystander in the zone of danger from the incident, has been permanently disabled with life-long injuries including, inter alia, Complex Regional Pain Syndrome and Post-Traumatic Stress Disorder, all as a direct result of the gross negligence, carelessness, recklessness and wanton disregard for human life by said officers.

56. By reason of the negligence of Defendants, Plaintiff has been damaged as set forth above and is entitled to recover all of her damages from Defendants.

## AS AND FOR A SECOND CAUSE OF ACTION
## UNDER N.Y. STATE LAW ASSAULT

57. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "56" with the same force and effect as if fully set forth herein.

58. Defendants' aforementioned actions placed plaintiff LAURAN CODE in apprehension of imminent harmful and offensive bodily contact.

59. As a result of the foregoing, plaintiff LAURAN CODE sustained, *inter alia*, lifelong permanent injuries, past lost earnings and future lost earnings, emotional distress, anxiety and depression.

60. As a result of defendants' conduct, plaintiff LAURAN CODE has suffered physical pain and mental anguish, together with shock, fright, apprehension, anxiety, and depression, past lost earnings and future lost earnings.

### AS AND FOR A THIRD CAUSE OF ACTION
### UNDER N.Y. STATE LAW: BATTERY

61. Plaintiff repeats, reiterates, and reallege each and every allegation contained in paragraphs numbered "1" through "60" with the same force and effect as if fully set forth herein.

62. The subject police officers touched plaintiff LAURAN CODE in a harmful and offensive manner when they discharged their weapons and shot her.

63. The subject police officers did so without privilege or consent from plaintiff LAURAN CODE, and without any legal justification for firing their weapons.

64. As a result of defendants' conduct, plaintiff LAURAN CODE has suffered physical pain and mental anguish, together with shock, fright, apprehension, anxiety, and depression, past lost earnings and future lost earnings.

### AS AND FOR A FOURTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

65. Plaintiff LAURAN CODE repeats, realleges and reaffirms each and every paragraph numbered "1" through "64" with the same force and effect as if more fully set forth at length herein.

66. The subject police officers engaged in reckless and grossly negligent conduct which unreasonably endangered Plaintiff LAURAN CODE'S health, safety and welfare.

67. The reckless and grossly negligent actions of the subject officers caused severe emotional distress to Plaintiff LAURAN CODE, who not only witnessed the police shoot Mr. Conrad to death, but also feared for her own life as a result of being shot by the police.

68. As a result of the recklessness and gross negligence of these officers, Plaintiff LAURAN CODE has developed Post Traumatic Stress Disorder and is under the daily care of a therapist and psychiatrist. Plaintiff has been prescribed and remains on Prozac, Ativan, Propranolol, Percocet, Topamax, Gabapentin, Clonazepam, Lyrica and Amitriptyline.

69. By reason of the reckless and grossly negligent acts of the subject officers, Plaintiff LAURAN CODE has been severely damaged as set forth above, and has suffered past lost earnings and future lost earnings as well.

70. By reason of the foregoing, Plaintiff LAURAN CODE is entitled to recover all of her damages from Defendant CITY OF NEW YORK.

## AS AND FOR A FIFTH CAUSE OF ACTION
## NEGLIGENT HIRING/TRAINING/RETENTION

71. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "70" with the same force and effect as if fully set forth herein.

72. Defendant THE CITY OF NEW YORK owed a duty to the public at large, including but not limited plaintiff LAURAN CODE, to exercise reasonable care in the selection, hiring and retention of all of its employees, and in particular, those employees with the job responsibility of dealing with the public at large.

73. Defendant THE CITY OF NEW YORK failed to use reasonable care when it hired P.O. Peralta.

74. Defendant THE CITY OF NEW YOK failed to make reasonable inquiries into the background of the subject officers, and in particular, into their fitness as police officers dealing directly with the public.

75. The fact that the subject officers discharged their firearms a total of nine (9) times into a crowded New York City street during morning rush-hour is, by itself, powerful evidence

that the officers were not properly trained on how to discharge their weapons without unreasonably endangering innocent bystanders in the process.

76.     Had defendant THE CITY OF NEW YORK used reasonable care in inquiring into the background of the subject officers, it would have learned that they were patently unqualified for this position, and it would not have hired them.

77.     As a result of the foregoing, defendant THE CITY OF NEW YORK breached its duty to use reasonable care in the selection and hiring of all of its employees.

78.     As a result of THE CITY OF NEW YORK'S negligence in hiring P.O. Peralta, plaintiff LAURAN CODE was subjected to a gunshot wound to her wrist, resulting in permanent and lasting physical and psychological injuries.

79.     Defendant THE CITY OF NEW YORK knew, or in the exercise of reasonable care, should have known, that the police officers who fired their weapons had a propensity for violating the rules, guidelines, and procedures of the New York Police Department.

80.     Defendant THE CITY OF NEW YORK knew, or in the exercise of reasonable care, should have known, that the police officers involved in this incident had a propensity for engaging in flagrant violations of accepted police practices, as detailed above. This is compelling evidence that the subject officers were not fit for duty as police officers in the first instance and should never have been hired, much less retained, by defendant CITY OF NEW YORK.

81.     Notwithstanding THE CITY OF NEW YORK'S knowledge of the propensities of the subject officers, defendant THE CITY OF NEW YORK retained subject officers as employees, and allowed them to continue to deal directly with the members of the public, including but not limited to, plaintiff LAURAN CODE.

82. In choosing to hire, and then retain, subject officers, defendant THE CITY OF NEW YORK breached its duty to the public at large, and to plaintiff LAURAN CODE in particular, to use reasonable care in the selection of its employees.

83. As a result of THE CITY OF NEW YORK's negligent hiring and retention of the subject officers, including P.O. Peralta, plaintiff LAURAN CODE was subjected to a gunshot wound to her wrist, resulting in permanent and lasting physical and psychological injuries.

84. By reason of the foregoing, Plaintiff LAURAN CODE is entitled to recover full compensatory damages, including damages for physical pain and suffering, severe psychological trauma, past lost earnings and future lost earnings, from Defendant CITY OF NEW YORK.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff LAURAN CODE demands judgment against the Defendant THE CITY OF NEW YORK, in the sum of twenty-five million dollars ($25,000,000.00) in compensatory damages, as well as the fees, costs, and disbursements of this action.

Dated:   New York, New York
         July 11, 2017

                                    Yours, etc.,

                                    _____
                                    JON L. NORINSBERG, ESQ.
                                    Jon@norinsberglaw.com
                                    Attorney for Plaintiff
                                    225 Broadway
                                    Suite 2700
                                    New York, New York 10007
                                    (212) 791-5396

        /s/
BARRY LEVIN, ESQ.
bl3160@aol.com
Attorney for Plaintiff
1225 Franklin Avenue
Suite 325
Garden City, New York 11530
(516) 222-4500

18